**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ALAYNA TAGUE, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>YKK AP AMERICA INC.,<br><br>Defendant. | **CLASS ACTION**<br><br>**Case No.**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Alayna Tague ("Plaintiff") individually and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against Defendant YKK AP America Inc. ("Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## SUMMARY OF THE CASE

1. Plaintiff brings this class action against Defendant for its failure to adequately supervise its third-party vendor, resulting in the loss of Plaintiff's and Class Members' personally identifiable information ("PII" or "Private Information").

2. Defendant is a Georgia-based building products manufacturer that designs and produces commercial façade systems, aluminum windows and doors, curtain walls, and residential windows and patio doors for the North American construction market.[1]

3. Plaintiff and Class Members were required to directly or indirectly provide Defendant with their Private Information in connection with the services Defendant provides.

4. On January 22, 2026, Defendant was informed by a third-party records management vendor that it had lost six (6) electronic tapes containing backup information of portions of Defendant's information systems ("Data Incident").[2]

5. On or about July 2, 2026, Defendant began sending individualized Notice of Security Incident letters ("Notice") to victims of the Data Incident, informing them that their Private Information had been lost in the Data Incident.

6. The Private Information of Plaintiff and Class Members exposed in the Data Incident includes: names, Social Security numbers, and bank account numbers / routing numbers.[3]

---

[1] https://www.ykkap.com/about-us/ (last visited July 8, 2026).
[2] *See* Defendant's Notice of Security Incident, attached hereto as **Exhibit A**.
[3] *Id*.

7. Upon information and belief, due to Defendant's failure to adequately supervise and monitor its third-party records management vendor, Plaintiff's and Class Members' Private Information was lost and potentially disclosed to unauthorized third parties who may now misuse that information, causing harm to the personal and financial lives of thousands of individuals including Plaintiff.

8. Defendant knowingly obtained Plaintiff's and Class Members' sensitive Private Information and had a resulting duty to securely maintain that information in confidence, including by ensuring that any third-party vendors to whom such information was entrusted maintained adequate safeguards. Plaintiff and Class Members would not have provided their Private Information to Defendant if they had known that Defendant would fail to adequately vet, supervise, and monitor its vendors to prevent wrongful disclosure.

9. By taking possession and control of Plaintiff's and Class Members' Private Information, Defendant assumed a duty to securely store and protect it.

10. Now, and for the foreseeable future, Plaintiff and the Class Members will have to deal with the risk of unauthorized parties possessing and potentially misusing their Private Information. Even those Class Members who have yet to experience misuse of their information have to spend time responding to the Data Incident and are at an increased risk of harm as a direct and proximate result of the Data Incident. Plaintiff and Class Members have incurred and will continue to

incur damages in the form of, among other things, potential misuse of their Private Information, lost time and expenses mitigating harms, increased risk of harm, deprivation of the value of their Private Information, loss of privacy, and/or additional damages as described below.

11. In sum, Plaintiff and the Class face a heightened risk of misuse of their Private Information because Defendant failed to adequately supervise its third-party vendor's data handling procedures, allowing a preventable Data Incident to occur.

12. Upon information and belief, Plaintiff's Private Information is available on the dark web as a result of the Data Incident.

13. Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose Private Information was exposed in the Data Incident. Plaintiff seeks remedies including compensation for time spent responding to the Data Incident and other types of harm, free credit monitoring and identity theft insurance for a substantial period, and injunctive relief including substantial improvements to Defendant's data privacy policies and practices.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (a) the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (b) the action is a class

action, (c) there are Class Members who are diverse from Defendant, namely Plaintiff, and (d) there are more than 100 Class Members.

15. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and because Defendant resides in this District.

## PARTIES

17. Plaintiff is a citizen and resident of McRae-Helena, Georgia, where she intends to remain.

18. Defendant is a New York corporation with its principal place of business located at 101 Marietta Street NW, Suite 2100, Atlanta, Georgia 30303.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

19. Defendant is a Georgia-based building products manufacturer that designs and produces commercial façade systems, aluminum windows and doors, curtain walls, and residential windows and patio doors for the North American construction market.[4]

20. Due to the nature of the services it provides, Defendant acquires and electronically stores Private Information. Defendant was therefore required to

[4] https://www.ykkap.com/about-us/ (last visited July 8, 2026).

ensure that Private Information was not disclosed or disseminated to unauthorized third parties without Plaintiff's and Class Members' express written consent. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties, including by properly vetting, supervising, and monitoring its vendors, encrypting the information, and purging information once it was no longer needed.

21. Upon information and belief, Defendant made promises and representations to Plaintiff and Class Members, including through Defendant's Privacy Policy[5] ("Privacy Policy"), that Private Information collected from them, including that of Plaintiff and Class Members, would be kept safe and confidential, that the privacy of that information would be maintained, and that Defendant

[5] https://www.ykkap.com/privacy-policy/ (last visited July 8, 2026) ("We have implemented technical, administrative, and organizational security measures designed to secure your Personal Information from accidental loss and from unauthorized access, use, destruction, alteration and disclosure. Your Personal Information is stored behind secured networks and a firewall and is only accessible by our personnel and by a limited number of Service Providers who have special access rights to our systems, and who are required to keep the information confidential. Our agents, contractors, Service Providers, and partners who require access to your Personal Information in order to provide services to us or to you on our behalf are also required to keep the information confidential in a manner consistent with this Privacy Policy and are not permitted to disclose the information to third parties or use the information for any purpose other than to carry out the services they are performing for us, or as permitted pursuant to our agreement with them.").

would delete any sensitive information after it was no longer required to maintain it.

**B. The Data Incident**

22. On January 22, 2026, Defendant was informed by its third-party records management vendor that the vendor had lost six (6) electronic tapes containing backup information of portions of Defendant's information systems. The vendor picked up the backup tapes on November 17, 2025, and only discovered that the tapes were missing on December 9, 2025.[6]

23. On or about July 2, 2026, Defendant began sending Notice to victims of the Data Incident, stating:[7]

> **What Happened?** On January 22, 2026, YKK AP was informed by our third-party records management vendor that they had lost six (6) electronic tapes containing backup information of portions of YKK AP's information systems. The vendor picked up the backup tapes on November 17, 2025, and only discovered that the tapes were missing on December 9, 2025. The vendor reports that after discovering the tapes were missing, they thoroughly searched by reviewing surveillance footage, inspecting their facilities, and checking service routes. Despite the vendor's efforts, the tapes have not been found. Once YKK AP was informed the tapes were lost, we completed a comprehensive review of the files that may have been in the backup tapes to determine what information was involved.

[6] Ex. A

[7] *Id.*

> **What Information Was Involved?** The review determined that your name and the following information was contained in the files stored on the tapes: Social Security number and bank account number/ routing number. We are notifying you in an abundance of caution.

24. To be clear, there are numerous issues with Defendant's handling of the Data Incident. The deficiencies in the Data Incident Notice exacerbate the circumstances for victims: Defendant fails to state whether it was able to successfully correct the issue and take steps to prevent similar incidents from occurring in the future, leaving victims to fear whether the Private Information that Defendant continues to maintain is secure. Additionally, Defendant failed to notify victims until approximately five months after Defendant was informed of the Data Incident by the vendor, depriving victims of the earliest opportunity to take preventative measures to protect their Private Information. All of this information is vital to victims of a Data Incident, particularly one of this magnitude due to the sensitivity of the information compromised.

25. Moreover, in its Notice, Defendant failed to specify whether it undertook any efforts to contact the Class Members whose data was lost in the Data Incident to inquire whether any of the Class Members suffered misuse of their data, whether Class Members should report their misuse to Defendant, and whether Defendant set up any mechanism for Class Members to report any misuse of their data.

26. Furthermore, Defendant's delay in notifying Plaintiff and Class Members of the Data Incident is in direct violation of Defendant's responsibilities under the data security incident notification statute in Georgia. See GA Code § 10-1-912(a) which requires that the disclosure notification be made in the "most expedient time possible and without unreasonable delay".

27. Defendant failed to meet this requirement by failing to provide its Notice for 161 days, as it learned of the Data Breach on January 22, 2026, but waited to notify affected individuals until July 2, 2026.

28. Defendant failed to take adequate precautions to ensure that its third-party vendors kept individuals' Private Information secure.

29. While Defendant sought to minimize the damage caused by the Data Incident, it cannot and has not denied that the sensitive Private Information of Plaintiff and Class Members was lost and potentially disclosed to unauthorized parties.

30. Individuals affected by the Data Incident are, and remain, at risk that their Private Information may be misused by unauthorized persons who may have obtained the lost tapes.

31. Plaintiff further believes that the Private Information of Class Members may be subject to misuse as a result of the loss of their Private Information in the Data Incident.

**C. Data Incidents Are Preventable.**

32. Data incidents involving wrongful disclosure of private information are preventable.[8] "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[9] "Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised[.]"[10]

33. Most reported data breaches "are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[11]

34. Here, many failures laid the groundwork for the Data Incident, including Defendant's failure to adequately vet, supervise, and monitor its third-party records management vendor.

---

[8] Lucy L. Thomson, *Despite the Alarming Trends, Data Breaches Are Preventable*, DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012), available at https://lawcat.berkeley.edu/record/394088.
[9] *Id.* at 17.
[10] *Id.* at 28.
[11] *Id.*

35. The Federal Trade Commission ("FTC") has published guidelines that establish reasonable data security practices for businesses.[12]

36. The FTC guidelines emphasize the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.[13]

37. The FTC guidelines establish that businesses should protect the confidential information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems.[14]

38. The FTC guidelines also recommend that businesses have a response plan ready in the event of an incident and promptly notify affected individuals when their personal information has been compromised.[15]

39. According to information and belief, Defendant failed to follow reasonable and necessary industry standards to prevent a data breach, including

[12] *Protecting Personal Information: A Guide for Business*, FTC (Oct. 2016), available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[13] *Id.*
[14] *Id.*
[15] *Id.*

the FTC's guidelines, particularly with respect to vetting and supervising third-party vendors entrusted with Private Information.

40. Defendant was at all times fully aware of its obligation to protect the Private Information of consumers under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored, and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

41. Defendant should have been particularly aware of the importance of careful vendor selection and oversight given the sensitive nature of the Private Information entrusted to its records management vendor.

42. As explained by the Federal Bureau of Investigation, prevention is the most effective defense against data incidents, and it is critical to take precautions for protection.

43. To prevent the Data Incident here, Defendant could and should have taken, among other measures, the following:

a. Conducted adequate due diligence before selecting its third-party records management vendor;

b. Required adequate contractual security obligations from its third-party vendor, including requirements for secure handling, transport, and storage of backup media;

c. Conducted ongoing oversight and monitoring of its third-party vendor’s security practices;

d. Audited or verified that its third-party vendor maintained adequate security controls for handling and transporting backup media;

e. Required its vendor to encrypt backup tapes containing Private Information; and

f. Implemented procedures to ensure that Private Information was securely destroyed or returned when no longer needed by the vendor.

44. According to information and belief, Defendant failed to do any of the above.

45. Specifically, among other failures, Defendant failed to adequately vet, supervise, and monitor its third-party records management vendor to ensure that Private Information was properly secured during transport and storage.

46. Moreover, it is well-established industry standard practice for a business to dispose of confidential Private Information once it is no longer needed.[16]

47. Proper vendor oversight and security requirements would have prevented this Data Incident. Rather than following basic standards of care for supervising vendors handling sensitive information, Defendant failed to ensure that its records management vendor had adequate security controls in place.

48. In sum, the Data Incident could have been easily prevented through standard practices like properly vetting vendors, requiring contractual security obligations, monitoring vendor compliance, and requiring encryption of backup media—which Defendant negligently failed to do.

49. Further, the scope of the Data Incident could have been dramatically reduced had Defendant required its vendor to utilize proper record retention and destruction practices, and had Defendant required encryption of backup media—but Defendant negligently did no such thing.

## D. Defendant Acquires, Collects, and Stores Individuals' Private Information

[16] *See Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

50. In connection with the services Defendant provides, Plaintiff and Class Members were required to give their sensitive and confidential Private Information to Defendant.

51. Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to carry out its regular business operations.

52. By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Private Information from disclosure.

53. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

54. Defendant could have prevented this Data Incident by properly vetting, supervising, and monitoring its third-party records management vendor, requiring adequate contractual security obligations, and ensuring encryption of backup media.

**E. The Data Incident Was Foreseeable and Defendant Was Aware of Its Risk**

55. It is well known that Private Information, including Social Security numbers, in particular, is valuable and sensitive.

56. Individuals place a high value not only on their Private Information, but also on the privacy of that data. For the individual, identity theft causes significant negative financial impact on victims as well as severe distress and other strong emotions and physical reactions.

57. Despite the importance of protecting sensitive Private Information, Defendant failed to take appropriate steps to ensure that its third-party vendor protected the Private Information of Plaintiff and Class Members from being lost or wrongfully disclosed.

58. Defendant was, or should have been, fully aware of the unique type and the significant volume of data that it collects and maintains, and, thus, the significant number of individuals who would be harmed by the inadvertent disclosure of such information to unauthorized persons.

59. In the Notice, Defendant makes an offer of a temporary subscription to a credit monitoring service.[17] This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact that victims of Data Incidents and other unauthorized disclosures commonly face multiple years of ongoing

---

[17] Ex. A.

identity theft, financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff and Class Members' Private Information. Moreover, once this service expires, Plaintiff and Class Members will be forced to pay out of pocket for necessary identity monitoring services.

60. Defendant's offering of credit and identity monitoring establishes that Plaintiff's and Class Members' sensitive Private Information *was* in fact affected and wrongfully disclosed, and will be subjected to an increased risk of misuse due to Defendant's Data Incident.

61. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to adequately supervise its third-party vendor and to implement or maintain adequate vendor oversight measures, policies, and procedures for protecting Private Information of Plaintiff and Class Members from loss or wrongful disclosure.

62. The ramifications of Defendant's failure to adequately supervise its vendor and protect the Private Information of Plaintiff and Class Members from loss are long lasting and severe. Once Private Information is lost or disclosed to unauthorized parties, misuse of that information and damage to victims may continue for years.

63. As an entity in possession of Plaintiff's and Class Members' Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members, including by properly vetting and supervising any third-party vendors to whom such information was entrusted, and of the foreseeable consequences if it negligently failed to supervise such vendors. This includes the significant costs imposed on Plaintiff and Class Members because of Defendant's negligence. Defendant failed to take adequate, reasonable measures to ensure its vendor properly protected Plaintiff's and Class Members' Private Information.

**F. The Value of Private Information**

64. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[18] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[19]

---

[18] 17 C.F.R. § 248.201 (2013).
[19] *Id.*

65. As a growing number of federal courts have begun to recognize the loss of value of Private Information as a viable damages theory, the loss of Private Information from data incidents, as in the Data Incident alleged herein, is particularly harmful to victims—especially when the lost information can be used for identity theft or fraud.

66. Plaintiff's and Class Members' Private Information is a valuable commodity, and Plaintiff's and Class Members' Private Information is at risk of misuse as a result of the loss. As a result, Plaintiff and Class Members have lost the value of their Private Information and face a substantial risk of identity theft, which is sufficient to plausibly allege injury arising from the Data Incident.

67. The PII of individuals remains of high value, and loss or unauthorized disclosure of such information creates significant risk of misuse and identity theft.

68. Private Information, once lost or disclosed to unauthorized parties, can be misused in numerous ways, including to commit identity theft, open fraudulent accounts, or file false tax returns.

69. The Private Information lost in this specific Data Incident was particularly harmful.

70. Of course, a stolen Social Security number – standing alone – can be used to wreak untold havoc upon a victim's personal and financial life. The popular personal privacy and credit monitoring service LifeLock by Norton notes

"Five Malicious Ways a Thief Can Use Your Social Security Number," including: 1) Financial Identity Theft that includes "false applications for loans, credit cards or bank accounts in your name or withdraw money from your accounts," and which can encompass credit card fraud, bank fraud, computer fraud, wire fraud, mail fraud and employment fraud; 2) Government Identity Theft, including tax refund fraud; 3) Criminal Identity Theft, which involves using someone's stolen Social Security number as a "get out of jail free card;" 4) Medical Identity Theft; and 5) Utility Fraud.

71. It is little wonder that courts have dubbed a stolen Social Security number as the "gold standard" for identity theft and fraud. Social Security numbers, which were compromised in the Data Incident, are among the worst kinds of private information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

72. According to the Social Security Administration, each time an individual's Social Security number is compromised, "the potential for a thief to illegitimately gain access to bank accounts, credit cards, driving records, tax and employment histories and other private information increases."[20] Moreover,

---

[20] *See* https://www.ssa.gov/phila/ProtectingSSNs.htm#:~:text=An%20organization's%20collection%20and%20use,and%20other%20private%20information%20increases. (last visited May 26, 2026)

"[b]ecause many organizations still use SSNs as the primary identifier, exposure to identity theft and fraud remains."[21]

73. The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiff and Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[22]

74. In fact, "[a] stolen Social Security number is one of the leading causes of identity theft and can threaten your financial health."[23] "Someone who has your SSN can use it to impersonate you, obtain credit and open bank accounts, apply for jobs, steal your tax refunds, get medical treatment, and steal your government benefits."[24]

---

[21] *Id.*

[22] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited May 26, 2026)

[23] *See* https://www.equifax.com/personal/education/identity-theft/articles/-/learn/social-security-number-identity-theft/ (last visited May 26, 2026)

[24] *See* https://www.investopedia.com/terms/s/ssn.asp (last visited May 26, 2026)

75. What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

76. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[25]

77. For these reasons, some courts have referred to Social Security numbers as the "gold standard" for identity theft. *Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019) ("Because Social Security numbers are the gold standard for identity theft, their theft is significant . . . . Access to Social Security numbers causes long-lasting jeopardy because the Social Security Administration does not normally replace Social Security

---

[25] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited May 26, 2026)

numbers."), report and recommendation adopted, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020); *see also McFarlane v. Altice USA, Inc.*, 2021 WL 860584, at *4 (citations omitted) (S.D.N.Y. Mar. 8, 2021) (the court noted that Plaintiff's Social Security numbers are: arguably "the most dangerous type of personal information in the hands of identity thieves" because it is immutable and can be used to "impersonat[e] [the victim] to get medical services, government benefits, ... tax refunds, [and] employment." . . . Unlike a credit card number, which can be changed to eliminate the risk of harm following a data breach, "[a] social security number derives its value in that it is immutable," and when it is stolen it can "forever be wielded to identify [the victim] and target him in fraudulent schemes and identity theft attacks.")

78. Based on the foregoing, the information lost in the Data Incident is significantly harmful because victims cannot simply cancel or change their Social Security numbers the way they could cancel a credit card. The Private Information lost in this Data Incident is permanent or difficult to change, making the harm ongoing.

79. Among other forms of fraud, third parties may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

80. The fraudulent activity resulting from the Data Incident may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is disclosed and when it is misused. According to the U.S. Government Accountability Office ("GAO"):

> Fraudulent use of improperly disclosed information may continue for years after the initial disclosure. As a result, studies that attempt to measure the harm resulting from data incidents cannot necessarily rule out all future harm.

81. Plaintiff and Class Members now face ongoing surveillance of their financial and personal records, monitoring, and loss of privacy. The Class is incurring and will continue to incur such damages in addition to any potential misuse of their Private Information.

**G. Defendant Failed to Comply with FTC Guidelines**

82. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

83. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that

businesses should: (i) protect the personal customer information that they keep; (ii) properly dispose of personal information that is no longer needed; and (iii) implement policies to correct security problems.

84. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of an incident.

85. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; use industry-tested methods for security; and verify that third-party service providers have implemented reasonable security measures.

86. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized disclosure of confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data protection obligations.

87. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized disclosure of individuals' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15

U.S.C. § 45.

**H. Defendant Failed to Follow Industry Standards**

88. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. Companies such as Defendant routinely observe standard data security policies and practices that are aimed towards preventing loss or inadvertent disclosure of Private Information, such as properly vetting third-party vendors before entrusting them with sensitive data, requiring contractual security obligations, conducting ongoing oversight and monitoring of vendor practices, and requiring encryption of backup media.

89. Defendant negligently failed to adequately vet, supervise, and monitor its third-party records management vendor, resulting in the loss of Private Information entrusted to Defendant by Plaintiff and Class Members.

90. Upon information and belief, Defendant failed to implement industry-standard administrative safeguards for overseeing third-party vendors entrusted with sensitive information, including failing to conduct adequate due diligence before selecting its records management vendor, failing to require contractual security obligations, failing to conduct ongoing oversight and monitoring of vendor practices, failing to audit or verify vendor security controls, and failing to require encryption of backup media.

91. These administrative safeguards for vendor oversight are applicable

and accepted industry standards. And by failing to comply with these accepted standards, Defendant allowed the loss of Private Information to occur—thereby causing the Data Incident.

**I. The Harm Caused by the Data Incident Now and Going Forward**

92. Victims of data breaches are susceptible to becoming victims of identity theft for years to come. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9).

93. The type of data that may have been lost and compromised here can be used to perpetrate fraud and identity theft, and Plaintiff and Class Members face a substantial risk of identity theft given that their Private Information was lost in the Data Incident.

94. When Private Information is lost or disclosed to unauthorized recipients, there is a substantial risk that the information may be misused for identity theft or fraud.

95. The link between the loss of Private Information and the risk of identity theft is simple and well established. When Private Information is lost or falls into the wrong hands, unauthorized persons may misuse the information for identity theft, fraud, or further disseminate it to others who may do so.

96. Because a person's identity is akin to a puzzle with multiple data

points, the more accurate pieces of data an unauthorized recipient obtains about a person, the easier it is for that person to misuse the victim's identity—or to use that information to obtain even more data about the victim.

97. For example, armed with just a name and Social Security number, an unauthorized person can use the information to obtain even more information about a victim's identity, open fraudulent accounts, file false tax returns, or commit other forms of identity theft. Loss of Private Information can be the starting point for additional targeted attacks on the victim.

98. One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[26]

---

[26] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/.(last visited June 25, 2026).

99. With "Fullz" packages, criminals can cross-reference sources of Private Information to marry unregulated data available elsewhere to wrongfully obtained data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

100. The development of "Fullz" packages means here that the lost Private Information from the Data Incident can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information, such as emails, phone numbers, or credit card numbers, may not be included in the Private Information that was compromised in the Data Incident, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

**J. Loss of Time to Mitigate the Risk of Identity Theft and Fraud**

101. According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[27] Defendant did not rapidly report to Plaintiff and Class Members that their Private Information had

[27] *2019 Internet Crime Report Released*, FBI (Feb. 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:~:text=IC3%20received%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion (last visited June 25, 2026).

been lost. Defendant did not notify impacted people until approximately five months after the vendor informed Defendant that the tapes were missing.

102. As a result of the recognized risk of identity theft, when a data incident occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Incident, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the incident, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the resource and asset of time has been lost.

103. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Incident, such as contacting credit bureaus to place freezes on their accounts; monitoring their accounts for suspicious activity; and checking their financial accounts for any indication of fraudulent activity, which may take years to detect.

104. These efforts are consistent with the U.S. Government Accountability Office, which released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time

to repair the damage to their good name and credit record."[28]

105. These efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[29]

**K. Diminution of Value of Private Information**

106. Private Information is a valuable property right.[30] The value is axiomatic, and the consequences of identity theft include substantial financial and emotional harm. Even this obvious analysis illustrates beyond a doubt that Private Information has considerable market value.

107. As a result of the Data Incident, Plaintiff's and Class Members' Private

---

[28] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf. (last visited June 25, 2026).

[29] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps. (last visited June 25, 2026).

[30] *See, e.g.*, Randall T. Soma, et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted). (last visited June 25, 2026).

Information, which has an inherent market value, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

108. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, including by properly vetting and supervising third-party vendors, and of the foreseeable consequences that would occur if Defendant's vendor oversight procedures were inadequate, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of loss or wrongful disclosure.

109. As a result of the Data Incident, the Private Information of Plaintiff and Class Members has been lost and exposed to potential misuse by unauthorized persons. The injuries suffered by Plaintiff and Class Members, or likely to be suffered as a direct result of Defendant's Data Incident, include: (a) loss of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the

consequences of this Data Incident; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Incident; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft resulting from their personal data being lost; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information and not allow loss of or access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant and its vendors, and which is subject to further loss or wrongful disclosure so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

### L. Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary

110. In addition to a remedy for economic harm, Plaintiff and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

111. Given the type of loss in this case and the sensitivity of the Private Information involved, there is a substantial probability that the lost information has been or will be misused by unauthorized persons for identity theft crimes.

112. Such fraud may go undetected for years; consequently, Plaintiff and

Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

113. As a result, Plaintiff and Class Members also request relief in the form of the future cost of credit and identity theft monitoring, which is reasonable and necessary. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Incident.

**M. Loss of the Benefit of the Bargain**

114. Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to directly or indirectly provide their Private Information to Defendant, Plaintiff and other reasonable consumers understood and expected that in exchange, Defendant would implement necessary data security to protect the Private Information, when in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

**N. Plaintiff's Experiences and Injuries**

***Plaintiff's Experience***

115. Plaintiff was required to directly or indirectly provide her Private Information to Defendant in connection with the services Defendant provides.

116. In connection with Plaintiff's provision of Private Information to Defendant, Defendant collected, stored, maintained, used, and transmitted Plaintiff's Private Information, including to its third-party records management vendor.

117. Plaintiff received a Notice from Defendant around July 2, 2026, informing her that her Private Information was exposed in the Data Incident.[31]

118. As a result of its failure to adequately supervise its third-party records management vendor, Defendant allowed Plaintiff's Private Information to be lost.

119. Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Incident's effects by failing to promptly notify her about the Data Incident.

120. Plaintiff suffered actual injury from the loss of her Private Information—which violates her rights to privacy.

121. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

---

[31] Ex. A.

122. As a result of the Data Incident, Plaintiff has spent time and made reasonable efforts to mitigate its impact, including but not limited to researching the Data Incident, reviewing credit card and financial account statements and monitoring her credit information.

123. Plaintiff will continue to spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was lost. Plaintiff has and is experiencing feelings of anxiety, stress, fear, and frustration because of the Data Incident. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Incident victim that the law contemplates and addresses.

124. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her Private Information being lost. This injury is worsened by Defendant's failure to promptly inform Plaintiff about the Data Incident.

125. Once an individual's Private Information is lost or disclosed to unauthorized parties, those persons may use the information to gather additional information. Plaintiff's Private Information was lost as a result of the Data Incident.

126. As a direct result of the Data Incident, Plaintiff has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the loss and compromise of her highly sensitive Private Information; time and effort lost attempting to mitigate the harm caused by the Data Incident; and deprivation of the value of her Private Information.

127. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's possession and with its vendors, is protected and safeguarded from future loss or wrongful disclosures.

128. Plaintiff also has a continuing interest in lifetime credit monitoring and identity theft monitoring on account of the Data Incident.

## CLASS ALLEGATIONS

129. Plaintiff brings this class action individually on behalf of herself and all members of the following Class of similarly situated persons pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) of the following class:

> All persons residing in the United States whose Private Information was lost in the Data Incident ("Class," and the individuals in the Class, the "Class Members"):

130. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a

controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

131. Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

132. Numerosity: The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. Defendant has not publicly disclosed the number of individuals affected by the Data Incident, but, upon information and belief, at least hundreds to potentially thousands of individuals have been affected by the Data Incident.

133. Commonality and Predominance: Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant had a duty to implement and maintain reasonable procedures and practices to protect and secure Plaintiff's and Class Members' Private Information from loss or unauthorized disclosure, including by properly vetting, supervising, and monitoring third-party vendors;

c. Whether Defendant's administrative practices and procedures

used to protect Plaintiff's and Class Members' Private Information violated the FTC Act and/or state laws, and/or Defendant's other duties discussed herein;

d. Whether Defendant failed to adequately respond to the Data Incident, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and Class Members;

e. Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's and Class Members' Private Information;

f. Whether Defendant's administrative systems and procedures prior to and during the Data Incident complied with applicable laws and regulations;

g. Whether Defendant's administrative systems and procedures prior to and during the Data Incident were consistent with industry standards;

h. Whether Plaintiff and Class Members suffered injury as a proximate result of Defendant's negligent actions or failures to act;

i. Whether Defendant failed to exercise reasonable care to secure

and safeguard Plaintiff's and Class Members' Private Information;

j. Whether Defendant breached duties to protect Plaintiff's and Class Members' Private Information;

k. Whether Defendant's actions and inactions alleged herein were negligent;

l. Whether Defendant was unjustly enriched by its conduct as alleged herein;

m. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

n. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

134. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of herself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

135. <u>Typicality:</u> Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her Private Information lost in the Data Incident. Plaintiff and Class Members were injured by the same

wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class Members.

136. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class and has no interests adverse to, or in conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

137. Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court.

138. Injunctive and Declaratory Relief: Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

139. Likewise, particular issues are appropriate for certification under Rule 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to: (a) whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, and safeguarding their Private Information, including by properly vetting and supervising third-party vendors; (b) whether Defendant failed to adequately monitor and audit its third-party vendors' data handling procedures; and (c) whether Defendant failed to take reasonable steps to safeguard the Private Information of Plaintiff and Class Members from loss.

140. All members of the proposed Class are readily ascertainable. Defendant has access to the names in combination with addresses and/or e-mail addresses of Class Members affected by the Data Incident.

## CAUSES OF ACTION

## COUNT I

## NEGLIGENCE

**(On Behalf of Plaintiff and the Class)**

141. Plaintiff restates and realleges paragraphs 1 through 140, above as if fully set forth herein.

142. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Defendant's administrative procedures to ensure that Plaintiff's and Class Members' Private Information in Defendant's possession was adequately safeguarded, that Defendant properly vetted, supervised, and monitored any third-party vendors entrusted with Plaintiff's and Class Members' Private Information, and that Defendant's employees and vendors tasked with handling such information were adequately trained on procedures regarding the proper handling and safeguarding of Plaintiff's and Class Members' Private Information.

143. Plaintiff and Class Members entrusted their Private Information to Defendant with the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and not disclose their Private Information to unauthorized third parties.

144. Defendant knew or reasonably should have known that a failure to

exercise due care in the collecting, storing, and using Plaintiff's and Class Members' Private Information involved an unreasonable risk of harm to Plaintiff and Class Members.

145. Defendant had a duty to protect Plaintiff's and the Class Members' Private Information as the custodian of their Private Information, which Plaintiff and Class Members were required to submit to Defendant in connection with the services Defendant provides.

146. Defendant had a duty to comply with industry standard data protection and policy measures and the FTC Act in its collection, storage, and management of Private Information, including by properly vetting, supervising, and monitoring third-party vendors entrusted with such information.

147. Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' Private Information.

148. A loss of Private Information due to vendor negligence, and resulting injury to Plaintiff and Class Members, was reasonably foreseeable, particularly in light of the risks inherent in entrusting sensitive information to third-party vendors without adequate oversight.

149. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate vendor oversight practices and procedures. Defendant

knew or should have known of the inherent risks in entrusting Plaintiff's and Class Members' Private Information to third-party vendors, the critical importance of properly vetting and supervising such vendors, and that it had inadequate vendor oversight protocols in place to protect Plaintiff's and Class Members' Private Information from loss.

150. Defendant's misconduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Incident as set forth herein, including failure to properly vet, supervise, and monitor its third-party records management vendor.

151. Plaintiff and Class Members had no ability to protect their Private Information that was in Defendant's possession.

152. Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Incident.

153. Defendant had a duty to timely disclose that Plaintiff's and Class Members' Private Information within its possession was compromised and precisely the type(s) of information that were compromised. Defendant breached this duty by failing to disclose the Data Incident until approximately seven months after the vendor picked up the backup tapes.

154. Defendant had a duty to have procedures in place to detect and

prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

155. Defendant systematically failed to implement adequate vendor oversight safeguards for handling Private Information entrusted to third-party vendors.

156. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within its possession, including by failing to properly vet, supervise, and monitor third-party vendors.

157. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to prevent loss of Plaintiff's and Class Members' Private Information by third-party vendors.

158. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within its possession might have been compromised and precisely the type of information compromised.

159. Defendant's breach of its duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised.

160. But for all of Defendant's acts of negligence detailed above, including failing to properly vet, supervise, and monitor its third-party records management vendor, Plaintiff's and Class Members' Private Information would not have been compromised.

161. Plaintiff's Private Information was lost without Plaintiff transmitting any of her own Private Information over the internet or any other unsecured source.

162. Following the Data Incident, Plaintiff's Private Information has been lost and may be disclosed to unauthorized third parties who may misuse that Private Information, and Plaintiff is unable to prevent its further dissemination.

163. But for the Data Incident, Plaintiff would not have incurred the loss of her Private Information and other injuries.

164. There is a close causal connection between Defendant's failure to properly vet, supervise, and monitor its third-party vendor to protect Plaintiff's and Class Members' Private Information and the harm suffered, or risk of harm suffered, by Plaintiff and Class Members. Plaintiff's and Class Members' Private Information was lost as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting,

implementing, and maintaining appropriate administrative procedures for overseeing third-party vendors.

165. Plaintiff and Class Members now face ongoing monitoring of their financial and personal records and loss of privacy. The Class is incurring and will continue to incur such damages in addition to any potential misuse of their Private Information.

166. As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members face an increased risk of harm in that their Private Information, which is now lost and may be in the possession of unauthorized third parties, may be misused.

167. Plaintiff seeks the award of actual damages on behalf of herself and the Class.

168. Plaintiff seeks injunctive relief on behalf of the Class in the form of an order (1) compelling Defendant to institute appropriate data collection and safeguarding methods and policies with regard to Private Information, including proper vendor oversight; and (2) compelling Defendant to provide detailed and specific disclosure of what types of Private Information have been compromised as a result of the Data Incident.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

169. Plaintiff restates and realleges paragraphs 1 through 140, above as if fully set forth herein.

170. Pursuant to the FTC Act, Defendant was required by law to maintain adequate and reasonable measures to maintain the security and privacy of Plaintiff's and Class Members' Private Information, including by properly vetting, supervising, and monitoring third-party vendors entrusted with such information.

171. Under the FTC Act, Defendant had a duty to maintain adequate data security measures when in possession of Plaintiff's and Class Members' Private Information, including by properly overseeing third-party vendors.

172. Defendant breached its duties by failing to employ industry standard administrative and data handling measures to ensure its compliance with federal and state laws, the FTC Act, and its internal Privacy Policies by, including, but not limited to, failing to properly vet and supervise its third-party records management vendor, failing to require adequate contractual security obligations from the vendor, failing to conduct ongoing oversight and monitoring of vendor practices, failing to require encryption of backup media, failing to delete Private Information after a certain period of time, and failing to properly train staff on data retention and data security procedures.

173. It was reasonably foreseeable, particularly given the sensitivity of the Private Information involved, that the failure to reasonably supervise and monitor third-party vendors would result in loss or unauthorized disclosure of Private Information.

174. Defendant's violations of the FTC Act constitute negligence *per se*.

175. Plaintiff and Class Members are within the category of persons the FTC Act is intended to protect.

176. The harm that occurred as a result of the Data Incident is the type of harm the FTC Act is intended to guard against.

177. Plaintiff's and Class Members' Private Information constitutes personal property that was lost due to Defendant's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

178. Defendant's conduct in violation of applicable laws directly and proximately caused the loss of Plaintiff's and Class Members' Private Information, and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Defendant's conduct. Plaintiff and Class Members seek damages and other relief as a result of Defendant's negligence.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

179. Plaintiff restates and realleges paragraphs 1 through 140 above as if fully set forth herein.

180. When Plaintiff and Class Members provided their Private Information to Defendant, they entered into implied contracts with Defendant, under which Defendant agreed to take reasonable steps to protect Plaintiff's and Class Members' Private Information, comply with its statutory and common law duties to protect Plaintiff's and Class Members' Private Information, and to timely notify them in the event of a Data Incident.

181. Defendant solicited and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's provision of services. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

182. When entering into implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's administrative practices complied with its statutory and common law duties to adequately protect Plaintiff's and Class Members' Private Information and to timely notify them in the event of a Data Incident.

183. Defendant's implied promise to safeguard Private Information is evidenced by, *e.g.*, the representations in its Privacy Policy.

184. Plaintiff and Class Members would not have provided their Private Information to Defendant had they known that Defendant would not safeguard their Private Information, as promised, or provide timely notice of a Data Incident.

185. Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

186. Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' Private Information, including by failing to properly supervise its third-party vendor, and by failing to provide them with timely and accurate notice of the Data Incident.

187. The losses and damages Plaintiff and Class Members sustained, include, but are not limited to:

a. Loss of their Private Information;

b. Costs associated with purchasing credit monitoring and identity theft protection services;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Incident – including monitoring accounts, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and taking other protective measures;

f. The increased risk of potential fraud and misuse posed by their Private Information being disclosed to unauthorized parties;

g. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against loss and disclosure and not allow loss of or access to and misuse of their data by others;

h. Continued risk of exposure to unauthorized parties of their Private Information, which remains in Defendant's possession and with its vendors, and is subject to further loss or wrongful disclosure so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data; and

i. Emotional distress from the unauthorized disclosure of Private Information to strangers who may now have opportunities to commit

identity theft, fraud, and other misuse of Plaintiff's and Class Members' information.

188. As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

189. Plaintiff restates and realleges paragraphs 1 through 140 above as if fully set forth herein.

190. Plaintiff and Class Members have an interest, both equitable and legal, in their Private Information that was conferred upon, collected by, and maintained by Defendant and that was lost in the Data Incident.

191. Defendant benefitted from the conferral upon it of Plaintiff's and Class Members' Private Information, and by its ability to retain and use that information. Defendant understood that it so benefited.

192. Defendant also understood and appreciated that Plaintiff's and Class Members' Private Information was private and confidential and that its value depended upon Defendant maintaining its privacy and confidentiality.

193. But for Defendant's willingness and commitment to maintain its privacy and confidentiality, that Private Information would not have been

transferred to and entrusted with Defendant. Further, if Defendant had disclosed that its administrative safeguards, including its vendor oversight practices, were inadequate, Defendant would not have been permitted to continue in operation by regulators and the financial marketplace.

194. As a result of Defendant's wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate administrative and vendor oversight measures, its continued maintenance and use of Plaintiff's and Class Members' Private Information without having adequate safeguards against loss, and its other conduct facilitating the loss of that Private Information), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

195. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiff's and Class Members' sensitive Private Information, while at the same time failing to maintain proper administrative procedures to prevent the wrongful disclosure of that information to unauthorized parties.

196. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiff's and Class Members' Private Information in an unfair and unconscionable manner. Defendant's

retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

197. The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

**COUNT V**
**INJUNCTIVE/DECLARATORY RELIEF**
**(On Behalf of Plaintiff and the Class)**

198. Plaintiff restates and realleges paragraphs 1 through 140 above as if fully set forth herein.

199. Defendant owes a duty of care to Plaintiff and Class Members requiring it to adequately secure Private Information, including by properly vetting, supervising, and monitoring third-party vendors entrusted with such information.

200. Defendant still stores Plaintiff's and Class Members' Private Information and continues to use third-party vendors.

201. Since the Data Incident, Defendant has announced no specific changes to its administrative procedures and vendor oversight processes which permitted the Data Incident to occur and, thereby, prevent similar incidents from occurring in the future.

202. Defendant has not satisfied its legal duties to Plaintiff and Class

Members.

203. Actual harm has arisen in the wake of the Data Incident regarding Defendant's duties of care to provide adequate safeguards to Plaintiff and Class Members, including by properly supervising third-party vendors. Further, Plaintiff and Class Members are at risk of additional or further harm due to the loss of their Private Information, and Defendant's failure to address the vendor oversight failings that led to that loss.

204. Plaintiff, therefore, seeks a declaration: (a) that Defendant's existing administrative measures and vendor oversight practices do not comply with its duties of care to adequately protect Private Information; and (b) that to comply with its duties of care, Defendant must implement and maintain reasonable safeguards, including, but not limited to, the following:

a. ordering that Defendant engage third-party auditors as well as internal personnel to conduct testing and audits on Defendant's data handling and vendor oversight systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such auditors;

b. ordering that Defendant engage third-party auditors and internal personnel to implement adequate vendor vetting and monitoring systems;

c. ordering that Defendant audit, test, and train its personnel regarding any new or modified data handling and vendor oversight procedures;

d. ordering that Defendant implement procedures to properly vet, supervise, and monitor any third-party vendors entrusted with Private Information, including requiring contractual security obligations and conducting ongoing oversight;

e. ordering that Defendant purge, delete, and destroy in a reasonably secure manner Private Information not necessary for its provision of services, including requiring vendors to do the same;

f. ordering that Defendant conduct regular audits of its third-party vendors' data handling and security practices; and

g. ordering that Defendant routinely and continually conduct internal training and education to inform personnel how to properly vet, supervise, and monitor third-party vendors and what procedures to follow to prevent loss of Private Information.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class

representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, nominal damages and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another Data Incident by adopting and implementing best administrative practices, including vendor oversight practices, to safeguard Private Information and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all claims herein so triable.

Dated: July 8, 2026, Respectfully submitted,

*/s/: Casondra Turner*
Casondra Turner (GA S.B. #418426)
**MILBERG, PLLC**
260 Peachtree Street NW, Suite 2200
Atlanta, GA 30303
Tel: (771) 772-3086
cturner@milberg.com

Leanna A. Loginov (*pro hac vice* forthcoming)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

*Counsel for Plaintiff and the Proposed Class*